UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __9/27/2022____

RICHARD AIBEL,

                 **Plaintiff,**

-against-

HARTFORD ACCIDENT & INDEMNITY COMPANY,

                 **Defendant.**

21-cv-6520 (ALC)

OPINION & ORDER

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiff Richard Aibel brought this action against Hartford Accident and Indemnity Company ("Hartford") alleging breach of contract relating to Defendant's decision to decline insurance coverage. Defendant now moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

BACKGROUND

    *A. The Parties*

    Plaintiff is a resident of New York. Defendant is a corporation organized under the laws of the state of Connecticut. Plaintiff is owner and chief executive officer of Majestic Rayon Corporation ("Majestic", a small, family business. Complaint ("Compl.") ¶ 13, ECF No. 14. Plaintiff states that "as a family business, the above Aibel family members performed their work for Majestic at times and locations as required by the practicalities of the corporation's business needs, as well as according to their own convenience." *Id.* ¶ 15. He further states that Majestic's properties are in use 24 hours a day, and require full-time, around-the-clock management and on-call support. There is always a person functioning in this role for Majestic, day and night, weekdays, weekends and holidays." *Id.* ¶ 16 Plaintiff alleges that, as CEO, he provides "around-the-clock" services for Majestic. *Id.* ¶ 17. He alleges that when he is unable to fulfill his roles,

his sons step in to provide "full-time, around- the-clock management and support for Majestic properties." *Id.* ¶ 18. Plaintiff describes Majestic's business as a property management business that appears to require complete devotion from members of the Aibel family:

> [I]in their capacity as the management team for a family business, Aibel and his family members go about their daily personal lives without observing hard-and-fast distinctions between work hours and personal hours.
>
> It is the official policy and longstanding practice of Majestic to allow its key employees such as Aibel, his wife and children the flexibility to perform their respective duties for the company at any hour of any day, and from any location, as long as the needs of the business are met.

*Id.* ¶¶ 25-26.

   B. *The Policy*

On March 26, 2019, Hartford issued an insurance policy (the "Policy") to Majestic. The Policy period ran from June 15, 2019 to June 15, 2020. The Policy included supplementary uninsured/underinsured motorists' ("SUM") coverage. SU Coverage is described as:

By purchasing SUM coverage . . . the policyholder and any insured under the policy can:

1. Be protected for bodily injury to themselves, up to the limit of the SUM Coverage purchased; and
2. Receive from the policyholder's own insurer payment for bodily injury sustained due to negligence of the other moto vehicles owner or operator.

ECF No. 1-2 at 7.

For the purposes of SUM coverage, the Policy further defines insured as: "Any person while acting in the scope of that person's duties for you, except with respect to the use and operation by such person of a motor vehicle not covered under this policy . . . ." ECF No. 1-2 at 49.

*C. The Accident*

On Sunday, September 1, 2019, Plaintiff was hit by a car. The accident occurred while Plaintiff was taking a leisurely walk with his wife. He alleges that during this walk he discussed Majestic's pending litigation with his wife. Plaintiff filed a claim with Hartford seeking coverage under the Policy. Hartford denied the claim on March 15, 2021. Plaintiff believes that Hartford's declination of coverage is a breach of contract. He filed suit in New York County State Court on June 18, 2021. Defendant removed the case to the Southern District of New York on August 2, 2021 and subsequently moved to dismiss the Complaint. In response, Plaintiff filed an Amended Complaint on September 23, 2021. Defendant filed a renewed motion to dismiss on October 15, 2021.

## LEGAL STANDARD

Defendants brings this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* When ruling on a Rule (12)(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and "draw all reasonable inferences in [plaintiff's] favor." *See, e.g.*, *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Case 1:21-cv-06520-ALC   Document 23   Filed 09/27/22   Page 4 of 8

# DISCUSSION

Defendant argues that (A) they have not waived their rights to decline coverage and Plaintiff is not an insured under the policy.B The Court takes each claim in turn.

> A. *Defendant Has Not Waived Its Right to Decline Coverage by Failing to Timely Disclaim Coverage.*

Plaintiff argues that Defendant should be estopped from challenging the application of the policy because they failed to follow procedures set out in Section 3420 of the New York Insurance Law. Section 3420 states:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Ins. L. §3420(d)(2). Section 3430(f)(2)(A) specifically addresses SUM coverage:

> The time of the insured to make any supplementary uninsured/underinsured motorist claim, shall be tolled during the period the insurer of any other owner or operator of another motor vehicle that may be liable for damages to the insured, fails to so disclose its coverage. As a **condition precedent** to the obligation of the insurer to pay under the supplementary uninsured/underinsured motorists insurance coverage, the limits of liability of all bodily injury liability bonds or insurance policies applicable at the time of the accident **shall be exhausted by payment of judgments or settlements.**

N.Y. Ins. L. § 3420 (emphasis added). The New York Court of Appeals has stated that "under Insurance Law § 3420, an insured's supplementary underinsured motorist coverage is triggered when the limit of the insured's bodily injury liability coverage is greater than the same coverage in the tortfeasor's policy." *Prudential Prop. & Cas. Co. v. Szeli*, 83 N.Y.2d 681, 684, 635 N.E.2d 282 (1994).

The Court need not reach the issue of whether § 3420(d)(2) limitations apply to SUM coverage. Plaintiff's SUM coverage claim did not ripen until at least March 3, 2021, the date he informed Hartford that the tortfeasor's insurance was exhausted. Compl. ¶ 52. Hartford

4

promptly declined coverage on March 15, 2021. *Id.* ¶ 53. Plaintiff's other waiver arguments are without merit.

*B. Aibel is not an "Insured" under the SUM Coverage position of the policy.*

Defendant argues that Plaintiff's theory of liability renders the limitations and exclusions of the insurance policy null. Under Plaintiff's theory, they argue, any employee can be said to be within the scope of their employment so long as their mind is on company affairs. The policy limits insureds to those acting within the scope of their duties for the policyholder. Because Majestic is the policy holder, for purposes of SUM coverage, an insured is an employ acting within the scope of their employment at the company. Neither party disputes this.

Under New York law, an employee is said to be acting within the scope of employment "when (1) the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities, and (2) the employee is doing something in furtherance of the duties he owes to his employer." *Agyin v. Razmzan*, 986 F.3d 168, 184 (2d Cir. 2021) (citations omitted). Whether an employee is acting in furtherance of the duties he owes to his employer depends on:

> (1) the connection between the time, place and occasion for the act;
> (2) the history of the relationship between the employer and employee as spelled out in actual practice;
> (3) whether the act is one commonly done by such an employee;
> (4) the extent of departure from normal methods of performance; and
> (5) whether the specific act was one that the employer could reasonably have anticipated.

*Agin*, 986 F.3d at 185 (quoting *Sharkey v. Lasmo (AUL Ltd.)*, 992 F. Supp. 321, 329 (S.D.N.Y. 1998)).

Plaintiff's arguments are unavailing. Plaintiff argues that his position at Majestic required him to be on call 24/7, meaning that he could be thinking of the company's affairs even when not on site, and because Majestic holds real estate, the company is always "open," further bolstering his on-call argument. Plaintiff cites two cases, *Migliano v. Romano*, 172 A.D.3d 1198

5

(2d Dep't 2019) and *Grant v. Nembhard*, 94 A.D. 3d 1397 (3d Dep't 2012), as supporting the theory that an individual can be said to be within the scope of employment even where he keeps irregular work hours. Those cases are inapposite. In *Migliano*, the plaintiff was injured by an individual driving a vehicle issued by their employer. The court noted that the defendant's employer paid all expenses related to the vehicle and expected the defendant to be on-call 24 hours a day. Crucially, at the time of the accident the defendant was returning home from a worksite. In *Grant*, the defendant was allegedly returning from a work-related event when the accident at issue occurred. The defendant received reimbursement from his employer for vehicle related expenses, and he alleged he worked irregular hours because he was on-call.

Contrary to Plaintiff's argument, the courts in *Migliano* and *Grant* do not adopt a theory that an individual may plainly allege that being on-call warrants a determination that every one of their actions is *always* within the scope of employment. The individuals in those cases were allegedly returning home from work obligations in vehicles paid for or subsidized by their employer.

At the time of the accident, Plaintiff was on a leisurely walk with his wife. Plaintiff was not actually on call. The fact that Plaintiff is at the helm of small business where one might shoulder more responsibility than the average employee in an employee-employer relationship does not render one as a 24/7 employee. Merely pondering work affairs cannot be said to be acting with the scope of his employment. Plaintiff also claims he discussed pending litigation with his wife. Here too, there is no indication that Plaintiff was acting under the control of Majestic. His role as CEO did not mandate that Plaintiff go on a walk around the neighborhood. Likewise, taking all facts as true, Plaintiff was not acting in furtherance of his role at Majestic. The fact that he spoke about pending litigation while on a walk with his wife—not with

6

Majestic's counsel—does not render his actions in furtherance of his duties to Majestic. *See, e.g.*, *Figura v. Frasier*, 144 A.D.3d 1586, 1588, 41 N.Y.S.3d 334, 336 (4th Dep't 2016) (declining to find individual working in scope of employment where employee did not derived no "special interest or derive[d] some special benefit" from employees actions); *Overton v. Ebert*, 580 N.Y.S.2d 508, 509 (3d Dep't 1992) (declining to accept plaintiff's argument that eating food on his break was intended to replenish his energy for work because his actions "necessary, or even helpful, to the performance of his duties").

Although Plaintiff alleges that it is within the family's culture to work 24/7, at the time of this conversation, as a matter of law, an employee cannot *constantly* be in the scope of employment. The rule would be rendered meaningless. *See Johnson v. Daily News, Inc.*, 34 N.Y.2d 33, 36, 312 N.E.2d 148, 149 (1974) ("To hold that by being subject to call in case of an emergent need for his services would subject the appellant to liability at a time when the employee was engaged in his own affairs on a regular day off from work, would be patently beyond the scope of the doctrine of Respondent superior."); *see also Ehlenfield v. State*, 404 N.Y.S.2d 175 (4th Dep't 1978) ("The fact that an employee is constantly "on call" is not sufficient to cast his employer in liability.").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate ECF No. 17.

**SO ORDERED.**

Dated:   September 27, 2022
         New York, New York

                                                     **ANDREW L. CARTER, JR.**
                                                     **United States District Judge**